UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. _____

04 - 30044 - MAP

| | |
|---|---|
| CHARLENE HARVEY, Derivatively on behalf of WAVE SYSTEMS CORP., | ) ) ) |
| Plaintiff | ) ) ) |
| vs. | ) ) |
| STEVEN SPRAGUE, GERALD T. FEENEY, JOHN E. BAGALAY, JR., NOLAN BUSHNELL, GEORGE GILDER and JOHN E. MCCONNAUGHY, JR., | ) ) ) ) ) |
| Defendants | ) ) |
| and | ) ) |
| WAVE SYSTEMS CORP., a Delaware Corporation | ) ) ) |
| Nominal Defendant | ) |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS AND UNJUST ENRICHMENT AND DEMAND FOR JURY TRIAL

Plaintiff, by her attorneys, submits this Verified Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of Wave Systems Corp. ("Wave Systems" or the "Company") on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between July 2003 and the present (the "Relevant Period") and that

01

have caused substantial losses to Wave Systems and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that many of the acts and the conduct constituting the violations of law complained of herein occurred in this District, and because nominal defendant Wave Systems maintains its principal executive offices in this District.

## SUMMARY OF THE ACTION

4.     Wave Systems creates technologies and services to secure and sell digital information. The Company's EMBASSY technology is a hardware and software-based device that enables secure transaction processing and distributed information metering in users' personal computers.

5.     On December 18, 2003, the defendants caused the Company to issue a press release in which it announced that the Securities and Exchange Commission ("SEC") was investigating certain public statements made by Wave Systems in August 2003, as well as certain insider selling that occurred around the same time.

6.     The true facts, which were known by each of the defendants, but concealed from the investing public during the Relevant Period, were as follows:

(a)    That the Company's IBM announcement dated August 4, 2003 would result in no direct revenue to the Company;

(b)    That the Company's Intel announcement dated July 31, 2003 was actually immaterial and would not generate any revenue to the Company until 2004, if ever;

(c)    That the so-called Intel contract did not require Intel to purchase even one piece of software; and

(d)    That the number of Trusted Platform Module ("TPM")-enabled motherboards shipped over the course of 2003 and 2004 would be *de minimis*.

7.    As a result of the defendants' false statements, Wave Systems stock traded at inflated levels during the Relevant Period, increasing to as high as $4.53 per share on August 5, 2003, whereby the Company's top officers and directors sold more than $1.5 million worth of their own shares.

## THE PARTIES

8.    Plaintiff Charlene Harvey is, and was at times relevant hereto, an owner and holder of Wave Systems common stock.  Plaintiff is a citizen of Virginia.

9.    Nominal defendant Wave Systems is a corporation organized and existing under the laws of the State of Delaware with its headquarters located at 480 Pleasant Street, Lee, Massachusetts.

10.    Defendant Steven Sprague ("Sprague") was, at all times relevant hereto, President, Chief Executive Officer ("CEO") and a director of Wave Systems.  Because of Sprague's positions, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to

internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Sprague participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:02, Wave Systems paid defendant Sprague $411,500, in salary and bonus, and granted him 252,500 options to purchase Wave Systems stock. During the Relevant Period, Sprague sold 457,500 shares of Wave Systems stock for proceeds of over $1 million. Defendant Sprague is a citizen of Massachusetts.

11.    Defendant Gerard T. Feeney ("Feeney") was, at all times relevant hereto, Senior Vice President, Chief Financial Officer ("CFO") and Secretary of Wave Systems. Because of Feeney's positions, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Feeney participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:02, Wave Systems paid defendant Feeney $287,000 in salary and bonus, and granted him 150,000 options to purchase Wave Systems stock. During the Relevant Period, Feeney sold 100,000 shares of Wave Systems stock for proceeds of $500,000. Defendant Feeney is a citizen of Massachusetts.

12.    Defendant John E. Bagalay ("Bagalay") is, and at all times relevant hereto was, a director of Wave Systems. Because of Bagalay's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Bagalay participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Bagalay is a citizen of Massachusetts.

13.    Defendant Nolan Bushnell ("Bushnell") is, and at all times relevant hereto was, a director of Wave Systems. Because of Bushnell's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Bushnell participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Bushnell is a citizen of California.

14.    Defendant George Gilder ("Gilder") is, and at all times relevant hereto was, a director of Wave Systems. Because of Gilder's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and

connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Gilder participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant Gilder is a citizen of Massachusetts.

15.     Defendant John E. McConnaughy, Jr. ("McConnaughy") is, and at all times relevant hereto was, a director of Wave Systems. Because of McConnaughy's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, McConnaughy participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Defendant McConnaughy is a citizen of Connecticut.

16.     The defendants identified in ¶¶10, 12-15 are referred to herein as the "Director Defendants." The defendants identified in ¶¶10-11 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶10-11 are referred to herein as the "Insider Selling Defendants." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

17.    By reason of their positions as officers, directors and/or fiduciaries of Wave Systems and because of their ability to control the business and corporate affairs of Wave Systems, the Individual Defendants owed Wave Systems and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Wave Systems in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Wave Systems and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

18.    Each director and officer of the Company owes to Wave Systems and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

19.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Wave Systems, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Wave Systems, each of the Individual Defendants had

access to adverse non-public information about the financial condition, operations, and improper representations of Wave Systems.

20.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Wave Systems, and was at all times acting within the course and scope of such agency.

21.    To discharge their duties, the officers and directors of Wave Systems were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Wave Systems were required to, among other things:

(a)    Refrain from acting upon material inside corporate information to benefit themselves;

(b)    Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)    Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)    Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    Remain informed as to how Wave Systems conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)    Ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

22.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Wave Systems, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of Wave Systems' Board during the Relevant Period.

23.    The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course

of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws. As a result, Wave Systems has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)  Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)  Costs incurred in investigating and defending Wave Systems and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

24.  Moreover, these actions have irreparably damaged Wave Systems' corporate image and goodwill. For at least the foreseeable future, Wave Systems will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Wave Systems' ability to raise equity capital or debt on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

25.  In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

26.  During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that

the Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at Wave Systems and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and  (iii) deceive the investing public, including shareholders of Wave Systems, regarding the Individual Defendants' management of Wave Systems' operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

27.    The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least July 2003 and continuing thereafter.  During this time the Individual Defendants caused the Company to conceal the true fact that Wave Systems was misrepresenting its financial results.  In addition, defendants also made other specific, false statements about Wave Systems' financial performance and future business prospects, as alleged herein.

28.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Wave Systems common stock so they could: (i)

dispose of over $1.5 million of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

29.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results.  Because the actions described herein occurred under the authority of the Board of Directors, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

30.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## **BACKGROUND**

31.    Wave Systems was incorporated in Delaware in August of 1988 under the name of Indata Corp., and changed its name to Cryptologics International, Inc. in December of 1989 before it settled on the name of Wave Systems Corp. in January of 1993.  The Company made its initial public offering on August 31, 1994 at a price to the public of $5.00 per share.  Until October 3, 1997, the Company's stock traded on The Nasdaq National Market tier of the Nasdaq. From October 3, 1997 to October 24, 1997, the stock traded on the Nasdaq Small Cap market

before being delisted from the exchange for not meeting minimum listing requirements. By year-end 1997, the Company had burned through some $48 million, and the December balance sheet showed a total of $758,000 in cash and a working capital deficit of some $600,000. KPMG Peat Marwick noted a "going concern" risk in their independent auditor's report.

32.     The Company managed to raise enough money to keep going by issuing stock and convertible securities in small increments through the end of 1997 and early 1998. The Company raised $800,000 by issuing 800,000 shares of stock and 160,000 warrants to six accredited investors in a private placement in September 1997. In October of the same year, the Company raised another $2.25 million by issuing 112,500 shares of convertible stock to another investor. In March of 1998, the Company raised another $3 million by issuing more convertible stock.

33.     The Internet stock boom came along at the perfect time, and Wave Systems caught it in full swing in March of 1999, when it was able to sell just over 2 million shares at $11 per share to a group of institutional investors, raising $23 million. This financing alleviated any danger of running out of cash in the short term. The Company was relisted on the Nasdaq, and began trading again on April 6, 1999, closing that day at $23.50 per share. However, in July 2003, the Company's share price had plummeted to less than $1, and with that drop, the Company's officers lost their ability to raise any capital for the Company or to line their own pockets via insider selling. The Individual Defendants then formulated a scheme to re-inflate the Company's shares by associating the Company "publicly" with two of the World's biggest technology companies - Intel and IBM. This, Individual Defendants believed, would trick the public into believing that the Company had new lifelines which would infuse profits into the

Company via agreements with these companies. With the "appearance" of two new separate revenue streams, the Individual Defendants sought to, and did, raise monies via a private placement to keep the Company on life support in addition to pocketing over $1.5 million in insider trading proceeds.

## IMPROPER STATEMENTS

34.    On July 31, 2003, the Individual Defendants caused the Company to issue a press release entitled "Wave Systems Announcement." The press release stated in part:

> Wave Systems Corp. announced an agreement today with Intel Corporation that will help enable both companies to accelerate the development and deployment of trusted applications and services for safer computing on personal computer platforms.
>
> The agreement will enable Intel to bundle Wave's software and services with a future Intel desktop motherboard, targeted for trusted computing platforms.
>
> "Wave helps fill a critical requirement for trusted computing services," said Michelle Johnston, acting director of marketing for Intel Desktop Board Operations. "We believe the EMBASSY® Trust Suite software will provide good value for our customers looking for trusted computing applications."
>
> "Wave has been working closely with Intel on the development of application and service solutions," said Brian Berger, senior vice president, Global Business Development, Wave Systems. "Both companies believe that in order to accelerate adoption in the marketplace, it is critical to identify and offer an attractive introductory set of services and high value applications. We are delighted to be working with Intel by providing solutions for this emerging market.
>
> "Wave believes that a portfolio of services will make trusted computing an important part of the personal computing market going forward. It is our job, to work with industry leaders like Intel, to help identify and develop those services that will bring the most value to the enterprise - as trusted hardware is deployed and a more secure computing environment becomes a reality." Berger said.

35.    On August 4, 2003, the Individual Defendants caused the Company to issue a press release entitled "Wave Systems Makes Enterprise Applications More Secure Than Ever; IBM's Independent Software Vendor (ISV) Program Helps Wave Systems Create More Secure Applications for the Enterprise User." The press release stated in part:

Wave Systems Corp. today announced that the new Document Manager Vault and SmartSignature security software applications in Wave's EMBASSY® Trust Suite client software family work with the IBM Embedded Security Subsystem, a hardware and software-based security solution available on select ThinkPad notebooks and ThinkCentre desktops, to create more secure applications for the business user.

The compatibility of Wave's security software applications with IBM's hardware and software security solution is a result of Wave's successful participation in IBM's Independent Software Vendor program.  This partnership is another example of IBM's commitment to help independent software vendors use IBM's hardware and software-based security system to make computing as secure as possible for the end-user.

"The early stages of any emerging market are critical. IBM has clearly established their leadership in trusted computing with their family of Embedded Security System personal computers," said Lark Allen, executive vice president, Wave Systems. "Wave's partnership with IBM will significantly help us in our objective to deliver open and interoperable solutions to business customers as trusted computing continues to evolve."

Leveraging the IBM security chip for personal computers, the Wave EMBASSY Trust Suite Client Business Edition includes the first of many new applications aimed at business users: Wave's Document Manager Vault and SmartSignature. Wave's EMBASSY Trust Suite represents one of the first portfolios of user software applications, administrative tools, and trust-based systems developed specifically around the new Trusted Computing Group (TCG) specification.

Wave's Document Manager Vault application offers a user-controlled vault for storage of private data, such as encrypted files and folders on personal computers. Document Manager Vault offers the choice of a simple drag-and-drop mechanism, as well as a set of integrated plug-ins for popular office tools to encrypt and decrypt any type of file on a local PC.  By using IBM's Embedded Security Subsystem in conjunction with Document Manager Vault, sensitive data is protected even if the PC is lost or stolen.

36.    On August 5, 2003, defendant Feeney sold 100,000 Wave shares at $5.00 per

share for proceeds of $500,000, cutting his share ownership by 50%.

37.    On August 6, 2003, defendant Sprague sold 150,000 Wave shares at $3.14-$3.47

per share for proceeds of $492,636, cutting his share ownership by 20%.

38.    On November 13, 2003, the Individual Defendants caused the Company to issue a

press release entitled "Wave Systems Provides Update on Corporate Progress and Reviews

Q3/Nine Months Results."  The press release stated in part:

> Wave Systems Corp., a leader in delivering trusted computing applications and
> services with advanced products, infrastructure and solutions across multiple
> trusted platforms, today reported results for its third quarter and nine month ended
> September 30, 2003 and reviewed significant recent corporate developments.
>
> Steven Sprague, Wave's president and CEO, said, "We can now clearly see the
> growing momentum for trusted computing in the marketplace, and we expect
> substantial growth in volumes over the course of the next four quarters.
>
> "Wave has clearly focused in establishing technological and market leadership in
> this space as a services and infrastructure provider.  We have delivered products
> that are easy to install, easy to configure, easy to use and are what business users
> really need.
>
> "We continue to add functionality and capability to the EMBASSY® Trust Suite
> tapping into Wave's expertise in building trusted computing services and
> infrastructure and responding to the needs of the marketplace.  Wave's ETS works
> seamlessly on all six Trusted Computing Group-compliant, commercially
> available platforms today.  We are now focusing on delivering to the market a
> portfolio of powerful client and server software solutions that we expect will give
> IT managers exceptional life cycle management capabilities and impressive
> cost-of-ownership results."

39.    On November 19, 2003, with the Company's shares inflated, the Individual

Defendants caused the Company to issue a press release entitled "Wave Systems Completes $7.1

Million Private Placement Financing."  The press release stated in part:

> Wave Systems Corp., a leading developer of trusted computing solutions and
> services, announced today that it has completed a $7.1 million private placement
> of Class A common stock and warrants with a group of institutional and
> accredited investors.  The financing is intended to fund Wave Systems' ongoing
> operations, specifically its sales and marketing efforts, as well as its engineering,
> development and customer support teams and its general corporate overhead.
>
> The private placement consists of 3,725,263 shares of common stock priced at
> $1.90 per share as well as warrants to purchase 1,095,227 shares of the company's
> common stock at an exercise price of $2.62 per share.  If exercised in their
> entirety, the warrants would generate an additional $2.9 million in gross proceeds
> to Wave. J. P. Carey Securities acted as the agent for the private placement.